JOHN SHANNON, by CATHERINE SHANNON, His Next Friend, v. KANSAS CITY LIGHT & POWER COMPANY, Appellant.

Division One, November 15, 1926.

1. **PLEADING: Electric Wire: Defective Insulation: Conclusion.** An allegation that defendant permitted the insulation of its electric wire to be in a defective condition is not a conclusion of law, where the allegation is preceded and followed by a statement of facts showing that defendant had negligently failed to insulate the wire.

2. **ATTRACTIVE NUISANCE: Electric Wire in Tree: Pleading and Proof: Habits of Children.** An action by a thirteen-year-old boy, who at play climbed into a tree in a parkway in a public street, and there came in contact with a loose-end guy wire of a telephone company, which came within an inch of or touched upon the sagging high-voltage light wires of defendant light and power company, wherein the petition alleges that "children for a long time had been in the habit of climbing said poles, being upon said cables and in a tree a few feet west of said poles" and that "defendant knew, or in the exercise of the proper degree of care should have known, of the habits of children aforesaid," and wherein the proof is that the steps for linemen by which children were able to climb to the tree were on the telephone pole, that the climbing of plaintiff and other children was confined to the telephone pole, the shade tree and the two telephone cables extending from the pole through the tree, and that plaintiff was in the tree when injured, and wherein there is neither allegation nor proof that the tree, or the telephone pole, or the telephone cables were on defendant's property or that defendant either owned or claimed any right therein, or that plaintiff trespassed upon defendant's property, or was in a place where defendant's current had a right to be, is not an attractive-nuisance case, and plaintiff's right to recover is not to be determined by the doctrine of attractive-nuisance or turn-table cases, and particularly so where the case is not submitted to the jury as one coming within the purview of that doctrine.

3. **ELECTRIC WIRES: Passing through Trees: Anticipating Presence of Children.** Carriers of high-voltage electricity must know and anticipate circumstances which are matters of common knowledge, and all persons know that children will climb into an attractive tree in the parkway of a public street. Besides, in this case the evidence amply shows that children had been in the habit of climbing into the very tree in which the thirteen-year-old plaintiff was injured when he seized hold of the lose-end uninsulated guy wire which touched upon defendant's high-voltage wires.

4. ———: **Precaution: Injury to Children Climbing Trees: Thirty Feet above Ground.** An electrical company, if reasonably chargeable with knowledge, or has knowledge of facts making it reasonably probable, that persons may lawfully come into close proximity to its wires in pursuit of either business or pleasure, is obligated to use every accessible precaution and the utmost care to insulate and to keep insulated such wires at such places. Where a guy wire had for a year been looped around a telephone pole, and its loose end had for months lain among the branches of a tree in the park-

way of a public street, and defendant's high-voltage uninsulated wires for a long time had been sagging in close proximity to or touching upon the guy wire, and for more than a month before the thirteen-year-old boy at play climbed into the tree and seized hold of the guy wire it had been seen to emit sparks and flashes, defendant did not fulfill its duty by merely putting its wires thirty feet above ground, but it owed the further duty to keep its wires from discharging the deadly electricity through the guy wire, and is chargeable with knowledge that it had rendered the tree dangerous to plaintiff or any other person who might climb into it.

5. ———: **Insurer: Utmost Care.** An electrical company is not an insurer of the safety of children who climb into a tree through which its high-voltage wires pass, but it is bound to use the highest degree of care to prevent injuries to such children, where their presence in the tree could have been reasonably anticipated and the tree is in the parkway of a public street.

6. ———: **Proximate Cause of Injury: Contributory Negligence.** A light and power company has not the slightest right to pass its uninsulated high-voltage electric wires through the branches of a tree in the parkway of a public street, and a thirteen-year-old boy who climbs into such tree is not a trespasser, and if while in the tree he takes hold of a guy wire whose loose end has long lain in the tree and in touch with or close proximity to such primary wires, the proximate cause of his resulting injury is the act of the company; and if he did not know the guy wire was in the tree and did not see it until after he had grasped it, he was not guilty of contributory negligence.

7. ———: **Children's Right of Travel.** A rule that the sole right of children in a public street is to travel horizontally, and not to ascend, would be contrary to the general law, and in disregard of their nature and instincts.

8. **INSTRUCTION: Striking out Words: Rereading.** Where the court struck out superfluous words in an instruction, after attorneys for both sides had made opening arguments, and appellant's counsel had declined to state whether he objected to the rereading by the court of the instruction as corrected, appellant was not prejudiced by the court's calling the attention of the jury to the fact that he had stricken out the repetitious words.

9. ———: **Right to Recover: Omission of Damages: Non-direction.** An instruction which correctly states the law and hypothesizes the facts entitling plaintiff to recover, and directs the jury that if they find such facts to exist to return a verdict for the minor plaintiff, is not erroneous because it does not limit plaintiff's recovery to pain and suffering and to loss of earning capacity after he reaches twenty-one years of age; and where defendant made no such objection in his motion for a new trial, and requested no instruction on the measure of damages, defendant is in no position to complain on appeal to the court's non-direction on the elements of damages.

10. **ELECTRIC WIRES: Proof of Insulation: Burns: Sparks.** The fact that the thirteen-year-old boy was instantly burned in his hands and feet when he took hold of the loose-end guy wire, which lay in the tree in close proximity to or touching upon defendant's high-voltage wire, is proof that such wire was not insulated; and further proof is evidence that continued escape of electricity for a period of a time through the insulation has the effect of destroying the insulation, and evidence that prior to the injury the guy wire had been seen for a month to emit sparks and flashes.

315 Mo.—72.

**11. PLEADING: Amendment before Verdict: Withdrawal of Allegation.** To amend the petition at the close of all the evidence by withdrawing a charge to prove which there is no evidence in the case does not prejudice defendant and is no ground of surprise. Where the petition had alleged that "defendant had placed and maintained a guy wire extending down" etc., and there was no proof that defendant had placed or maintained a guy wire, permission to plaintiff to amend the petition to conform to the proof by striking out the words "defendant had placed and maintained" and changing the word "extending" to "extended" did not prejudice defendant.

**12. VERDICT: Form.** If no objection was made to the form of the verdict in the trial court it will not be ruled on appeal that it was not in right form because it used the word "verdict" instead of the word "issues," which was the word used in the form given to the jury.

**13. EVIDENCE: Steps on Telephone Pole.** Evidence that there were steps on the telephone pole leading up into the tree where there was a dangerous electric wire has nothing to do with the attractive-nuisance doctrine in a case which does not come within the purview of that doctrine, but is competent to show the actual situation of the place where plaintiff's injuries were received.

**14. EXCESSIVE VERDICT: Loss of Fingers and Toes: Thirty Thousand Dollars.** When the thirteen-year-old boy, at play in the branches of a tree, grasped a guy wire which had come in contact with defendant's high-voltage wires, his left hand was severely burned, and as a result he has lost the two fingers next to the little finger of the left hand, the first joint of the index finger, the first joint of the thumb, about two-thirds of the palm, and two toes next to the big toe of the left foot. The left thumb, index finger and little finger are deformed, and their use impaired, and the remainder of the thumb is bound down and imbedded in palm scar tissue. There is a deep constricted scar on the top, side and bottom of the left foot, and the great toe is turned outward. The remainder of the left hand and left foot are scarred, gnarled, disfigured and generally ineffective, though much better than no hand and no foot. **Held,** that a verdict for thirty thousand dollars will be affirmed upon condition that plaintiff remit $12,500 as of the date of judgment.

---

Corpus Juris-Cyc. References: **Appeal and Error,** 3 C. J., Section 765, p. 865, n. 50; p. 866, n. 51; Section 863, p. 967, n. 42; 4 C. J., Section 2609, p. 701, n. 49; Section 2920, p. 943, n. 81; p. 944, n. 84. **Damages,** 17 C. J., Section 362, p. 1062, n. 84; Section 425, p. 1101, n. 28; Section 434, p. 1104, n. 52; Section 446, p. 1113, n. 88. **Electricity,** 20 C. J., Section 35, p. 341, n. 68; Section 36, p. 342, n. 79; p. 343, n. 82; Section 39, p. 345, n. 7; p. 346, n. 9, 11; Section 40, p. 351, n. 56, 57; p. 353, n. 62, 65, 68 New; Section 42, p. 355, n. 87, 88; Section 44, p. 357, n. 14; Section 45, p. 360, n. 36; Section 52, p. 367, n. 10, 16; Section 54, p. 372, n. 36; Section 59, p. 378, n. 88; p. 379, n. 93; Section 65, p. 384, n. 39; Section 66, p. 386, n. 49; p. 388, n. 57; Section 67, p. 390, n. 75. **Evidence,** 23 C. J., Section 1810, p. 59, n. 22. **Negligence,** 29 Cyc., p. 448, n. 51; p. 463, n. 93; p. 464, n. 3. **New Trial,** 29 Cyc., p. 753, n. 14; p. 1023, n. 32. **Pleading,** 31 Cyc., p. 51, n. 71; p. 401, n. 93. **Trial,** 38 Cyc., p. 1693, n. 55; p. 1787, n. 99; p. 1877, n. 15.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

AFFIRMED (*upon condition*).

*Johns H. Lucas, William C. Lucas* and *Ludwick Graves* for appellant.

(1) The court erred in refusing to sustain the objection to the introduction of any evidence in the case. (a) The petition did not state facts sufficient to constitute a cause of action, but stated mere conclusions of the pleader. Hollis v. Light & Power Co., 204 Mo. App. 297. (b) The only possible theory of the petition was the attractive nuisance, which is not recognized in this sort of a case in Missouri. Rollo v. Const. Co., 291 Mo. 671; State ex rel. v. Ellison, 281 Mo. 671; Kelly v. Benas, 217 Mo. 1; O'Hara v. Gas Light Co., 244 Mo. 405; Buddy v. Terminal Railroad, 276 Mo. 284, 288. (2) The court erred in refusing to grant the demurrer to the evidence and the peremptory instruction. (a) Under the pleadings and the evidence appellant could not have reasonably anticipated this accident, and respondent was a casual trespasser. McCoy v. Power & Light Co., 229 S. W. 623; Anderson v. Railroad, 130 N. W. 391; McCaffrey v. Concord Elec. Co., 114 Atl. 395; State to use of Stansfield v. Tel. Co., 148 Atl. 149; Hardy v. Mo. Pac. Ry. Co., 266 Fed. 860; New York Ry. Co. v. Fruchter, 43 Sup. Ct. Rep. 38. (b) The appellant had fulfilled its obligation by putting its wires thirty feet up the air. Weatherby v. Gas & Elec. Co., 75 Atl. 8; Parker v. Elec. Ry. Co., 85 S. E. 33; Graves v. Water Power Co., 87 Pac. 956; Mayfield Water & Light Co. v. Webb's Admr., 129 Ky. 395; Brush E. L. & P. Co. v. Lefevre, 49 L. R. A. 771. (c) The appellant is not an insurer, and is only liable for casualties that might be reasonably anticipated. Hardy v. Mo. Pac. Ry. Co., 266 Fed. 860; State ex rel. v. Ellison, 271 Mo. 433; American Brewing Assn. v. Talbott, 141 Mo. 683. (d) The proximate cause of respondent's injury was his own act in ascending the pole and crossing the cables and in grabbing the wire, and no act of appellant. State ex rel. v. Ellison, 271 Mo. 463; Boelsel v. Wells Fargo & Co., 260 Mo. 463; American Brewing Assn. v. Talbott, 141 Mo. 674; Smith v. Ozark Water Mill Co., 238 S. W. 575. (e) Liability in this case is against the great weight of authority in the United States. New York, N. H. & Hartford Railroad v. Fruchter, 43 Sup. Ct. Rep. 38; United Zinc & Chemical Co. v. Britt, 42 Sup. Ct. Rep. 299; McCoy v. Power & Light Co., 229 S. W. 623; Mayfield Water Co. v. Webb's Admr., 129 Ky. 395; Wetherby v. Gas & Elec. Co., 25 L. R. A. (N. S.) 1120; Graves v. Water Power Co., 11 L. R. A. (N. S.) 452; Parker v. Electric Ry. Co., 169 N. C. 68; Roche v. Edison Co., 146 N. Y. Supp. 294; Simonton v. E. L. & P. Co., 28 Tex. App. 376; Anderson v. Railroad Co., 150 Iowa, 465; McCaffrey v. Concord Elec. Co., 114 Atl. 395; Stansfield v. Telephone Co., 123 Md. 120; Hanna v. Iowa

Central Ry. Co., 129 Ill. App. 134; Hickox v. Heat & Light Co., 206 N. Y. 464; Thompson v. Tel. Co., 138 Ky. 109; Johnson v. Elec. Light Co., 17 L. R. A. (N. S.) 435; Charlotte v. El. Anse, 154 Mich. 304; Adams v. Bullock, 227 N. Y. 208; Freeman v. Brooklyn Heights Ry. Co., 54 App. Div. 596, 66 N. Y. Supp. 1052; Kempf v. Railroad Co., L. R. A. 1915C, 405; O'Gara v. Electric Co., 244 Pa. 156; Hardy v. Mo. Pac. Ry. Co., 266 Fed. 863; Rollo v. Const. Co., 291 Mo. 221; State ex rel. v. Ellison, 281 Mo. 621; Buddy v. Railroad, 276 Mo. 276; O'Hara v. Gaslight Co., 244 Mo. 405; Kelley v. Bcnas, 217 Mo. 1; Carey v. Kansas City, 187 Mo. 716; Arnold v. St. Louis, 152 Mo. 173; Butz v. Cavanaugh, 137 Mo. 503; Moran v. Pullman Car Co., 134 Mo. 641; Barney v. Railroad, 126 Mo. 372; Witte v. Stifel, 126 Mo. 295; Rushenberg v. Railway Co., 109 Mo. 112; Overholt v. Vieths, 93 Mo. 422. (3) The court erred in giving respondent's Instruction 1. (a) It does not limit his recovery to his pain and suffering, and the loss of earning capacity, after he reaches the age of twenty-one years, but was a roving commission to the jury to find any kind or amount of damages. Hawes v. Stock Yards Co., 103 Mo. 60; Maggioli v. Transit Co., 108 Mo. App. 416; Wilburn v. Transit Co., 36 Mo. App. 203. (b) It broadens the issues by submitting the question of defective insulation, which is unsupported by the testimony. Daniels v. Pryor, 227 S. W. 105; Degonia v. Railroad, 224 Mo. 589; State ex rel. v. Ellison, 270 Mo. 653. (4) The verdict is insufficient upon which to base a judgment: (a) It merely finds a verdict for the plaintiff and fails to find the issues in the case in his favor. McKinley v. St. Ry. Co., 192 S. W. 1052. (b) It is contrary to the court's Instruction 10 in that it fails to find any issues whatever for the plaintiff. McKinley v. St. Ry. Co., 192 S. W. 1052. (5) The court erred in failing to set aside the judgment because of its gross excessiveness, it clearly showing on its face that it was the result of passion and prejudice, contrary to the facts and the law, and not the result of fair and impartial consideration on the part of the jury. Jones v. Railway Co., 228 S. W. 785; Mahany v. Rys. Co., 228 S. W. 827. It is grossly excessive. Phippin v. Mo. Pac. Ry. Co., 196 Mo. 321; Reynolds v. Transit Co., 189 Mo. 408; Huston v. Railroad Co., 151 Mo. App. 335; Davenport v. Electric Co., 242 Mo. 111; Williams v. Wabash Railroad Co., 175 S. W. 900; Riggs v. Railroad Co., 212 S. W. 878; Parks v. United Rys. Co., 235 S. W. 1067; Simon v. Brass Works, 250 S. W. 74.

*Joseph B. Shannon, James A. Shannon, Harry R. Freeman* and *Madden & Madden* for respondent.

(1)   Plaintiff's theory of recovery:  20 C. J. 357; Curtis on Law of Electricity, secs. 437, 497; Goodwin v. Tel. Co., 157 Mo. App. 596; Paine v. Elec. Co., 72 N. Y. Supp. 279; Atlantic City Rys. v. Owings, 97 Ga. 663; Paducah L. & P. Co. v. Parkman, 156 Ky. 197; Nashville Inter. Ry. Co. v. Gregory, 137 Tenn. 422; Richmond Elec. Co. v. Rubin, 102 Va. 809; Johnson v. Elec. L. Co., 232 S. W. 1194; Brubaker v. Elec. L. Co., 130 Mo. App. 439; Kribbs v. Jeff. City L., H. & P. Co., 199 S. W. 261; Von Treba v. Gas L. Co., 209 Mo. 659; Clark v. Railroad Co., 234 Mo. 418; Sudmeyer v. Railways, 228 S. W. 64.   (2)   The objection to the introduction of evidence: Harrison v. Light Co., 195 Mo. 606.   (3)   The attractive nuisance doctrine:  29 Cyc. 447; Williams v. Gas & Elec. Co., 274 Mo. 11; Godfrey v. L. & P. Co., 253 S. W. 238; Day v. L. & P. Co., 136 Mo. App. 274; Thompson v. City of Slater, 197 Mo. App. 247; 20 C. J. 350; Curtis on Law of Electricity, sec. 467; Guinn v. Teleg. Co., 72 N. J. L. 276; Benton v. Pub. Service Co., 163 N. C. 354; Ferrell v. Durham Fric. Co., 172 N. C. 682; Com. Elec. Co. v. Melville, 210 Ill. 70; Temple v. E. L. & P. Co., 89 Miss. 1; Daltry v. Media Elec. Co., 208 Pa. 403; Meyer v. L. & P. Co., 151 Wis. 279; Mullen v. G. & E. Co., 229 Pa. 54; Dwight Mfg. Co. v. Ward, 75 So. 979; Toney v. St. Pr. Co., 180 Iowa, 1362.

ATWOOD, J.—Kansas City Light & Power Company appeals from a judgment in the Circuit Court of Jackson County for $30,000, awarded respondent as damages for personal injuries resulting from electrical burns.

The principal allegations of plaintiff's amended petition are that defendants operated and maintained electric light systems in Kansas City, Missouri, and in doing so provided, placed and maintained wires strung on poles in and about said city; "that said wires carried an electric current for lighting streets and furnishing light and power to residences and business houses in said city; that two or more of said wires were strung on poles north-and-south across 26th Street between Brooklyn and Park Avenues, all public streets in said city; that it was the duty of defendants to keep said wires carrying the current of electricity insulated and to keep them in such a position and condition and the insulation thereon so that the electric current would not escape to other wires or substance with which they came in contact; that below said wires, also strung on poles, were cables carrying wires east and west, that a guy wire extended down from one of said poles on the north side of 26th Street, and on the 29th day of July, 1917, the wires carrying the current as aforesaid were loose and sagged down and came in contact with the guy wire, and the insulation was in such condition

that the current escaped to said guy wire, making it carry a high voltage of electricity, and children for a long time had been in the habit of climbing said poles, being upon said cables and in a tree a few feet west of said poles;'' that on the 29th day of July, 1917, plaintiff ''was in said 26th Street and came in contact with the guy wire, the wires carrying the current, and with the cables carrying other wires as aforesaid, and the current of electricity passed from the guy wire and wires carrying the current through his body injuring him as follows: Plaintiff's hands, feet and body were burned and lacerated and injured to such a degree that operations were required, and parts of the hands, feet and fingers were removed; that plaintiff received a severe shock to his entire nervous system; was rendered unconscious and suffered from loss of blood;'' that ''on account of said injuries he has suffered great physical pain and mental anguish; that he has been disabled thereby, suffers therefrom, and will be disabled as long as he lives; that on account of said injuries his hands are almost useless, and his feet so impaired that it interferes with his ability to walk and move about; that said injuries are serious and permanent in their nature and plaintiff is greatly humiliated by the unsightly scars and burns on his body; that he suffers from nervousness and loss of nerve control; that his earning capacity is permanently impaired.'' The petition further alleges that ''the defendants were negligent in that they permitted said wires charged with and carrying said current of electricity and the insulation thereof to become and continue to be in such a defective condition and caused or permitted said wires to sag down and come in contact with said guy wire as aforesaid and the high and dangerous current of electricity to escape to said guy wire and by it and the wires carrying the current to be communicated to and injure the plaintiff as aforesaid; and that defendants knew, or in the exercise of the proper degree of care could and should have known of the habits of children as aforesaid, and of the defective condition of said wires and the insulation thereon and that they were hanging down and in contact with said guy wire conveying to it the current of electricity as above stated, and the danger to children coming in contact with said wire, in time to have remedied or corrected the same before plaintiff was injured but negligently failed to do so.''

Defendant's answer was a general denial, coupled with a plea of contributory negligence in that ''plaintiff might have seen, knew or might have known the condition of the wires at the time and place of the alleged injury and seeing and knowing such condition might have avoided coming in contact therewith and avoided the injury to himself, if any.''

In the caption of all the pleadings Kansas City Light & Power Company and Kansas City Power & Light Company were named as defendants. At the close of all the evidence plaintiff dismissed as

to defendant Kansas City Power & Light Company, and by leave of court amended his petition by erasure and interlineation to conform to the proof.

From the evidence it appears that plaintiff was about thirteen years old when injured. He met with his injuries on Sunday afternoon, July 29, 1917, while climbing with a boy companion of similar age through the top of a shade tree located in the parkway at the northwest corner of the intersection of 26th Street in Kansas City, Missouri, with an alley extending north and south midway between Brooklyn and Park Streets. This shade tree stood six or seven feet west of the alley. Four or five feet east of this shade tree was a pole of the Bell Telephone Company twenty or twenty-five feet high, near the top of which two parallel telephone wire cables or conduits were attached, one on each side of the pole, extending east and west over the parkway on the north side of 26th Street. About a foot east of this Bell telephone pole, and at the end of the parkway next to the alley, was a pole of the Home Telephone Company thirty or thirty-five feet high, which carried an east-and-west telephone wire cable or conduit near the top. Defendant's two primary light wires, carrying a 2300 volt current of electricity, passed in a north-and-south direction about midway between the Bell and the Home telephone cables, and were supported on cross-arms attached to two of defendant's light poles set on the same side of the alley as the Home telephone pole, a primary light wire being on each side of the light poles, the distance between defendant's pole in the alley north of 26th Street and its pole in the alley south of 26th Street being variously stated from 120 to 300 feet. A single-strand galvanized guy wire was attached to the Home telephone pole beneath an iron bracket supporting two Gamewell police telephone wires. Defendant's two primary light wires also came beneath the Gamewell wires. There was testimony that defendant's wires sagged and came within an inch or so or touched this guy wire, and a short time previous to the date of plaintiff's injuries sparks or flashes had been seen at this point. The guy wire extended west into the shade tree for a length of ten or twelve feet, but did not reach the ground. One witness testified that it was formerly attached to an iron anchor in the ground, but broke loose and just hung there in the shade tree. Plaintiff and his companion had been playing "tree-tag," climbing up and down the shade tree and the Bell telephone pole, and back and forth along the Bell cables between this pole and the tree for fifteen or twenty minutes, when in an effort to climb through the tree branches and get away from his pursuing companion plaintiff put his left foot on one of the cables and while reaching for a branch with his left hand caught hold of this guy wire and was severely burned. The burns resulted in the loss of the two fingers next to the little finger on his left hand, the first joint of the left index finger, the first

joint of the left thumb, about two-thirds of the left palm, deformity and impaired use of the left thumb, index finger and little finger, loss of the two toes next to the great toe on the left foot, deep contracted scar on the top, side and bottom of this foot, and deformity and impaired use of the great toe. The right hand and the right foot were also slightly burned, but not permanently impaired. Other facts developed at the trial will be hereafter noted in connection with the questions raised by the appeal.

I. Appellant's first assignment of error is that "the court erred in refusing to sustain the objection to the introduction of any evidence in the case."

(a) In support of the above it is urged that one specific allegation of negligence with reference to defendants' wires was that defendants permitted "the insulation therefor to become and continue to be in such defective condition . . ." Appellant says that this statement is a mere conclusion of the pleader. The only case cited in support of this view is Hollis v. Kansas City Light & Power Company, 204 Mo. App. 297, l. c. 313, wherein the court expressly declined to decide the question here raised. However, even if the question had been there ruled as appellant contends in this case the cases could be distinguished on the pleadings. In the Hollis case the pleader contented himself with the charge that defendant negligently suffered or permitted the wire "to become defectively insulated," while in the petition before us the language which appellant quotes above is preceded by the following allegations to which it clearly relates and in connection with which it must be read: "that it was the duty of defendants to keep said wires carrying the current of electricity insulated and to keep them in such a position and condition and the insulation thereon so that the electric current would not escape to other wires or substance with which they came in contact; that below said wires also strung on poles were cables carrying wires east and west; that a guy wire extended down from one of said poles on the north side of 26th Street, and on the 29th day of July, 1917, the wires carrying the current as aforesaid were loose and sagged down and came in contact with the guy wire and the insulation was in such condition that the current escaped to said guy wire, making it carry a high voltage of electricity," etc. The petition further alleged that "the defendants were negligent in that they permitted said wires charged with and carrying said current of electricity and the insulation thereof to become and continue to be in such a defective condition and caused or permitted said wires to sag down and come in contact with said guy wire as aforesaid and the high and dangerous current of electricity to escape to said guy wire and by it and the wires carrying the current to be communicated to and injure the plaintiff

*Pleading: Conclusion.*

as aforesaid;'' etc.  Taken as a whole the petition sufficiently stated this ground of negligence and defendants' objection was properly overruled.

(b)  Further in support of this objection appellant says that ''the only possible theory of the petition was the attractive nuisance, which is not recognized in this sort of a case in Missouri.''  Even if the petition states a case under the attractive-nuisance theory of negli-gence it cannot be said that it is ''the only possible the-

**Attractive Nuisance.** ory of the petition'' when we have just held that the ground of negligence fully set out in above paragraph (a) is also sufficiently stated.  But does the petition state a case under the ''attractive-nuisance'' or ''turn-table'' theory of negli-gence?  Appellant insists that plaintiff in further pleading that ''defendants knew, or in the exercise of the proper degree of care should have known of the habits of children as aforesaid,'' which clause evidently refers to plaintiff's previous allegation that ''chil-dren for a long time had been in the habit of climbing said poles, being upon said cables and in a tree a few feet west of said poles,'' pleaded the attractive-nuisance doctrine and supported it with tes-timony that there were steps on one of these poles for the use of the linemen by which the boys were able to climb up into the air.  Re-spondent, on the other hand, emphatically denies that this is an attractive-nuisance case.  Counsel on both sides thus agree that the ''attractive-nuisance'' or ''turn-table'' doctrine, as recognized in this State, does not apply to the case made, but we understand the contention of appellant to be that in the pleading, proof and sub-mission of his case plaintiff invoked the doctrine and should be held to that theory here.  This calls for a comparative study of the plead-ings, proof and instructions in the instant case and in other cases tried on the attractive-nuisance theory.

Appellant first cites O'Hara v. Gas Light Co., 244 Mo. 395.  Our opinion in that case adopted the view of GOODE, J., of the St. Louis Court of Appeals, that the petition invoked the ''turn-table doctrine.'' The petition alleged at page 402 (italics ours) ''that said pipe as so placed upon said street was an *attraction* to children to be about same and play thereon,  .  .  .  that on said day plaintiffs' said child with other children were *attracted* by said iron pipe to be on and about said pipe at play, and when plaintiffs' said child was on or about said pipe at play, owing to said insecure, unpropped, and unfastened condition of said pipe it rolled upon and so injured plaintiffs' child that it died,'' etc.  The proof was that plaintiffs' nine-year-old son, on the evening the injury occurred and after de-fendant had placed the pipe in the street as alleged, was sent to a bakery on an errand.  Either on his way there or on his return, and while standing in the middle of the street, a gas pipe lying in front of the brewery stable was started rolling by some boys play-

ing on or about it, and it rolled into the middle of the street, struck the O'Hara boy, knocked him down, rolled on him and crushed his skull, causing his death. Furthermore, plaintiffs asked and the court gave a long instruction, containing among other things this language (italics ours): "And if the jury find from the evidence that defendant and its agents and contractors so placing said pipe upon said street knew or in the exercise of ordinary care, would have known that children would be *attracted* to play at and about said pipe so placed on said street, and would be liable to be injured by said pipe rolling from said place when so placed; and if the jury find from the evidence that defendant and its contractor so causing said pipe to be so placed upon said street and left in said insecure condition, did not exercise ordinary care in doing so; and if the jury find from the evidence that on the 17th day of July, 1903, while said pipe was so upon said street, in said insecure condition, plaintiffs' said son was on said street, *attracted* to be near said pipe by said pipe, and whilst so upon said street, said pipe by reason of said insecure condition in which it was placed and left upon said street by defendant's said contractor was caused to roll upon and over plaintiffs' son and so injure him as to cause his death," etc. Such pleading, proof and submission clearly invoked the "attractive-nuisance" or "turn-table" doctrine. The origin of this doctrine is thus stated by GRAVES, J., in the same opinion, l. c. 404: "The 'turn-table doctrine' of negligence had its birth in a property owner erecting upon his own premises inherently dangerous machinery or structures, which were alluring and attractive to children, and leaving such unguarded."

Another case cited by appellant is Kelly v. Benas, 217 Mo. 1, which was admittedly tried on the "turn-table" theory, and in the language of the opinion appellants leaned on this doctrine "as on a staff." The petition expressly pleaded that defendants' lumber yard was an *attraction* for children to play on their premises. The "turn-table" doctrine is thus stated in the opinion at page 11 (italics ours): "The doctrine of those cases is, in substance, that *a railroad turn-table is a dangerous machine created by the act of its owner, peculiarly attractive to the childish instincts of little ones as a merry-go-round*, and, if left unlocked when not in use (when it might be easily locked) *and when exposed in a public place where children resort to it* with the knowledge and tacit acquiescence of its owner to play on it, *becomes an attractive nuisance and operates as an inducement, an implied invitation to them*, and, therefore, when injured thereon they are not treated strictly as voluntary trespassers, but as tolled into a hidden pitfall or trap."

In Buddy v. Railroad, 276 Mo. l. c. 279, cited by appellant, the petition in express terms invoked the doctrine of the "turn-table"

cases as the sole ground of recovery, plaintiff openly tried the case on that theory below and frankly presented it on the same theory here.

State ex rel. Kansas City v. Ellison, 281 Mo. 667, cited by appellant, reached this court on *certiorari* directed to the Kansas City Court of Appeals, and on page 679 of our opinion it thus clearly appears that plaintiff invoked the "turn-table" doctrine (italics ours) : "The opinion says that *Instruction 3 for the plaintiff presented to the jury the doctrine of the turn-table cases, i. e., 'an attractive nuisance.'* Whilst the opinion is not very explicit, we have examined the instruction, and in fact *the instruction does present such a theory* of recovery, and *the petition charges that the coping was attractive to children,* and bottoms the right to recover on the negligence of a failure to fence, or a failure to guard it."

The most recent case cited by appellant in support of its above contention is Rallo v. Heman Construction Co., 291 Mo. 221. The allegations of the petition and the instructions given by the court are not set out in the opinion, but the opinion states (1. c. 226) that "appellants rely on the doctrine of the 'turn-table' cases," from which we conclude that it was expressly pleaded, and the digest of appellants' brief preceding the opinion fully supports this view.

Another case not cited by appellant, but typically invoking the "attractive-nuisance" theory, though not as the sole ground of negligence, is State ex rel. Kansas City Light & Power Co. v. Trimble, Judge, et al., recently decided by this court and reported in 285 S. W. 455. A fourteen-year-old boy climbed the steps on a *pole jointly used* by defendant Kansas City Light & Power Company, the Home Telephone Company, and the Bell Telephone Company, and was killed by coming in contact with an uninsulated part of defendant's electric wire near the place where it was attached to the pole. The petition alleged, at page 457 (italics ours) *"that said pole with the steps and wires thereon and thereto attached were attractive to deceased and boys of his age, experience, and capacity, and constituted an invitation and lure to deceased and such boys to climb upon such pole and come in contact with said wires,* and thereby to occasion his death or injury."

Now what is there in the instant case to show that plaintiff invoked the "attractive-nuisance" doctrine, or tried the case on that theory? Appellant directs our attention to nothing except the brief allegations of the petition which we again quote, that "children for a long time had been in the habit of climbing said poles, being upon said cables and in a tree a few feet west of said poles," and that "defendants knew or in the exercise of the proper degree of care should have known of the habits of children as aforesaid;" and plaintiff's proof that there were steps on the Bell telephone pole for the use of the

linemen by which the boys were able to climb. It appears from the evidence that the climbing of plaintiff and the other children was confined to the Bell telephone pole, the shade tree, and the two Bell telephone cables extending from the pole through the tree, and plaintiff was in the shade tree when injured. Neither the shade tree, nor the Bell telephone pole, nor the Bell telephone cables were on defendant's property, and defendant neither had nor claimed any rights therein. The petition does not allege and there was no attempt to prove that defendant either created, suffered or maintained anything that attracted this plaintiff or other children to the place of injury. There is neither allegation nor proof that plaintiff ever trespassed upon defendant's property or was in any place where defendant's electric current had a right to be. Appellant does not even claim that the case was submitted to the jury upon the "attractive-nuisance" theory, and an examination of the instructions shows that it was not so submitted. The most that can be said as to this phase of the whole case is that plaintiff sought to plead and show that defendant knew or in the exercise of the proper degree of care should have known that children were in the habit of climbing about the place where the injury occurred. Our foregoing study of the very cases cited by appellant demonstrates that such pleading and proof in no sense invoke the "attractive-nuisance" or "turntable" doctrine of negligence. Furthermore, we have expressly so ruled in Williams v. Gas & Electric Co., 274 Mo. 1, in Godfrey v. Kansas City Light & Power Co., 299 Mo. 472, and in Davoren v. Kansas City, 308 Mo. 513. As counsel for appellant have contented themselves with blandly ignoring these cases, any further comparison and discussion of other cases ruled in this State or in other jurisdictions would merely lengthen our opinion and serve no useful purpose. We are satisfied that the case was not tried on the "attractive-nuisance" theory, and we so hold.

II. Appellant also says that the court erred in refusing defendant's demurrer to the evidence at the close of plaintiff's case and its peremptory instruction at the close of all the evidence. In support of this proposition appellant urges (a) that it "could not have reasonably anticipated this accident," (b) that it "had fulfilled its obligation by putting its wires thirty feet up in the air," (c) that "appellant is not an insurer," (d) that no act of appellant was the proximate cause of the injury, and (e) that "liability in this case is against the great weight of authority in the United States."

**Electric Wires: Dangerous Condition: Anticipation.**

There was ample evidence that children had been in the habit of climbing this shade tree and that defendant had reasonable cause

to expect the presence of children in its branches.  Even if the habit had not been shown the doctrine is well settled that carriers of high-voltage electricity must know and anticipate circumstances which are matters of common knowledge.  In Williams v. Gas & Electric Co., 274 Mo. 1, held not to have been tried on the "attractive-nuisance" theory, we said at page 11:  "Everybody knows boys will climb trees.  It is the probability of their presence there which brings trees within the general rule of Geismann v. Elec. Co., supra.  The rule is not that only such boys are protected as may *climb from the ground* into a tree.  The thing required to be anticipated is *the presence* of children *in the tree*.  The method by which they get into it cannot ordinarily be very important.  . . .  The boy had reached a place where he had a right to be and where appellant reasonably might have anticipated his presence.  His method of reaching the place may have been unusual, but that method did not bring about his injury."

Again, in Godfrey v. Kansas City Light & Power Co., 299 Mo. 472, 1. c. 485-6, held not to have been tried on the "attractive-nuisance" theory, we said:  "It is also well-established law, that electric companies must take notice of the natural instinct of boys to climb trees—especially trees which bear nuts or fruit—and if they string wires through such trees under circumstances which may reasonably charge them with notice of the probability of boys climbing such trees, and a boy who has climbed a tree to get the nuts or fruit— or even to satisfy his childish instinct to climb trees—is injured by an uninsulated or dangerous wire, without contributory negligence, the company must respond in damages.  [Williams v. Gas & Elec. Co., 274 Mo. 1; Kribs v. Jefferson City Light Co. (injury to boy in pasture), 199 S. W. (Mo. App.) 261; Thompson v. Slater (injury to boy in tree), 197 Mo. App. 247; Temple v. Electric Co., 89 Miss. 1, and many cases from other jurisdictions cited by this court in the Williams case, supra, at page 9.]  This is the general law.  In Curtis on the Law of Electricity, section 512, it is thus stated: 'An electric company, maintaining a dangerous wire through or near a tree, is bound to anticipate that persons may lawfully climb the tree, and it is required to exercise due care to prevent injury to such persons from its wire.  . . .  The courts recognize that children are apt to climb trees, and impose upon electric companies the burden of using due care to keep their high-tension wires insulated in places where children when climbing a tree will come in contact with them.' ''

Defendant did not fulfill its obligation by merely putting its wires thirty feet up in the air.  Under the facts in this case it owed the further duty to keep these wires from discharging their deadly burden through the guy wire the loose end of which for months had lain

among the branches of this shade tree, which guy wire at least a month previous had been seen to emit fiery sparks and flashes. It had been looped around the Home telephone pole for a year or more and according to plaintiff's evidence defendant's wires had for a long time been sagging in close proximity to or touching the guy wire. The facts and circumstances in evidence were sufficient to charge defendant with knowledge that it had rendered the top of this shade tree as dangerous to any one who might be therein as if its uninsulated high tension wires had been stretched through the branches. Under such circumstances we thus declared the law in Godfrey v. Kansas City Light & Power Co., supra, l. c. 485: "It is well settled that an electrical company, 'if reasonably chargeable with knowledge, or of facts making it reasonably probable, that persons may lawfully come into close proximity to its wires for purposes of either business or pleasure, is obligated' to use every precaution which was accessible to insulate its wires 'at such places and to use the utmost care to keep them so.' [Williams v. Gas & Elec. Co., 274 Mo. 8; Geismann v. Electric Co., 173 Mo. 674; Von Trebra v. Gas Co., 209 Mo. 659; Clark v. Railroad, 234 Mo. 419; Campbell v. United Rys. Co., 243 Mo. 152; Sudmeyer v. United Rys. Co., 228 S. W. 64.]"

It is true that "appellant is not an insurer," but it was bound to exercise the highest degree of care to prevent such injuries as befell plaintiff, they being such as could have been reasonably anticipated. The cases cited by appellant do not hold otherwise.

The proximate cause of plaintiff's injury was no act of plaintiff, but that of defendant in permitting the presence of its deadly current of electricity in the shade tree where such current had not the slightest right to be. Plaintiff was never at any time a trespasser upon defendant's property and intercepted no path that defendant's electrical current had a right to follow. The fact that he was injured while on a third person's property makes no difference. We have expressly held that such fact is no defense in a case of this kind. [Williams v. Gas & Electric Co., 274 Mo. l. c. 11; Godfrey v. Kansas City Light & Power Co., 299 Mo. l. c. 486.]

In support of the assertion that liability in this case is against the great weight of authority in the United States appellant cites a long line of cases which we have examined. Most of them, unlike the instant case, were admittedly tried on the "attractive-nuisance" theory and adjudged under that rule. Aside from such cases, which are without application here, the great weight of authority in other States as well as in Missouri points to appellant's liability in this case. McCaffrey v. Concord Electric Co., 114 Atl. 395, 80 N. H. 45, upon which appellant mainly relies, is not only distinguishable from the case now before us on the facts, in that it assumes without evi-

dence that the defendant had a right to string its wires through the trees and that the child had no right to be in the tree, but it stands alone among the courts of the land in the doctrine of "chance or casual trespass." It holds, in effect, that the sole right of a child in a public highway is to travel horizontally, but not to ascend, which is contrary to the general law of the land. As to this doctrine it is well said in respondent's brief: "Before children can be confined to the surface of the highway the nature and instincts of childhood itself must be changed. If that should become the law it would sweep away every right of protection to children at play or adults in recreation or amusement. It would make an 'attractive nuisance' of every bench and bank and pool and tree in public park, street or highway where tired humanity young and old might foregather for a little pleasure."

III.   After the opening argument on each side was made, the court, at the request of plaintiff and over defendant's objection, struck out the following words which occurred by way of repetition in plaintiff's Instruction 1, to-wit, "were known to the defendant, or could have been known to it as aforesaid." Appellant admits that the matter stricken out was superfluous, but claims that it was prejudicial for the court to reread the instruction to the jury. The record shows that the instruction was not reread. After the change was made the court offered to reread the instruction to the jury, but defendant's counsel declined to state whether the objection was being made to its being read again or not read. The substance of counsel's answers to the court's several inquiries was, "I want to save exceptions." Thereupon, the court called the jury's attention to the fact that he had stricken out the above repetitious words. We are of the opinion that defendant was not prejudiced by the court's action.

**Rereading Instruction.**

IV.   Plaintiff's Instruction 1, as above modified and finally given, reads as follows:

"The court instructs the jury that if you believe and find from the evidence that defendant, at the time and place in question, was operating an electric light system in Kansas City, Missouri, and conveying its electric current through wires strung on poles along public streets and thoroughfares in said city, then it was the duty of defendant, in the specific respects hereinafter mentioned, to so maintain such wires as to prevent the escape of such electric current into other wires or substances which would endanger the safety of human life if such escape could have been prevented and danger avoided by the exercise of the highest practicable degree of care and skill that reasonably prudent men would have exercised in the same business under the same or similar circumstances.

**Instruction.**

"If, therefore, you believe and find from the evidence that defendant, at the time and place in question and for the purpose aforesaid, maintained wires carrying a high voltage of electricity strung on poles north and south across Twenty-sixth Street, between Brooklyn and Park Avenues, in said city; and that one of said wires sagged down and came in contact with a guy wire (if you find there was such wire) extending down from one of the poles and into the tree top mentioned in evidence; and that the insulation on defendant's electric wire was in such condition (if you so find) that the current escaped from said wire into said guy wire (if you find there was a guy wire) and that said guy wire became charged with a high voltage of electricity and that plaintiff, while playing in the tree top (if you find he was), came in contact with the guy wire and was shocked and injured (if you so find); and if you further believe and find from the evidence that children had been in the habit of climbing upon the pole, cables and tree mentioned in evidence and that defendant knew, or in the exercise of the care herein defined could have known, of such habit of children and the condition of said insulation and the sagging position (if you so find) of said electric wire and its contact (if any) with said guy wire as aforesaid and the danger (if any) to children climbing said pole, cables and tree (if you so find) in time so that, by the exercise of the care and skill herein defined, it could have remedied or corrected said conditions or avoided such danger (if any) prior to plaintiff's injury and yet failed (if you so find) to do so, then the defendant was guilty of negligence; and if you further believe and find from the evidence that as a direct result of said negligence (if any) plaintiff was injured then your verdict should be in favor of the plaintiff, unless you further find that at the time and place of his injury he failed to exercise ordinary care for his own safety and that such failure on his part directly contributed to his injury."

Appellant now says that the court erred in giving the above instruction in its final form, because, it is contrary to the law in that the appellant was not negligent under the law and evidence, it is

**Contrary to Law.** an unwarranted and unauthorized extension of the attractive-nuisance doctrine, it makes appellant an insurer, and it is contrary to the great weight of authority. These points are a mere repetition of arguments previously advanced to which we have already given full consideration and space.

Appellant further complains that this instruction does not limit plaintiff's recovery to pain and suffering and to loss of earning capacity after he reaches the age of twenty-one years. Defendant made no such complaint in its motion for a new trial.

**Non-Direction.** This was not an instruction on the measure of damages, as in the case cited by appellant, but confined solely to plain-

tiff's right to recover. There was no misdirection. Defendant voluntarily went into the matter of plaintiff's earnings, but requested no instruction on the measure of damages. It is not in any position to complain of the court's non-direction.

Appellant also says that this instruction broadens the issues by submitting the question of defective insulation, which is unsupported by the testimony. Defective insulation that permitted defendant's electric current to escape and injure plaintiff was expressly pleaded and substantially shown by the facts in evidence. There was testimony that some weeks prior to the day plaintiff was injured the guy wire had been seen to emit sparks and flashes of fire indicating an escape of electricity therefrom, and when witness McKinney, one of defendant's employees, was asked whether or not "a continuous escape over a period of time of current through the insulation has the effect of destroying it," he replied, "Yes, I expect it would." Moreover, the baleful consequence of plaintiff's contact with the guy wire, taken in connection with the testimony that defendant's high tension wires sagged until they were in close proximity to or touched the guy wire, is evidence that defendant's wires were defectively insulated. In Von Trebra v. Gaslight Co., 209 Mo. l. c. 659, and in subsequent opinions, we have approved the rule here applicable and thus stated in Geisman v. Missouri-Edison Electric Co., 173 Mo. l. c. 678: "It follows from these authorities that it was defendant's duty, in the first place, to use every protection which was reasonably accessible to insulate its wires at the point of contact or injury in this case, and to use the utmost care to keep them so, and the fact of the death of Geismann is conclusive proof of the defect of the insulation and negligence of the defendant, and as to whether he was guilty of contributory negligence or not was a question for the jury."

*Proof of Insulation.*

Appellant also sought to instruct the jury that the principal cause of respondent's injury was his own act in ascending the pole, in crossing the cables, and in taking hold of the wire. We have previously ruled that no act of plaintiff was the proximate cause of his injury. We might here suggest that the jury properly found against defendant's charge of contributory negligence on the part of plaintiff. The evidence is that plaintiff did not know the guy wire was in the tree and did not see it until after he had grasped it.

At the close of all the evidence plaintiff was permitted to amend his petition to conform to the proof by striking out the words "defendants had placed and maintained," and changing the word "extending" to "extended." This part of the petition originally read "that defendants had placed and maintained a guy wire extending down," etc. There was no proof that defendant placed or maintained the guy wire,

*Withdrawal of Charge.*

315 Mo.—73.

and defendant was not hurt by plaintiff's withdrawal of the charge, nor was defendant surprised so as to entitle it to a continuance.

Appellant next complains because the jury in writing out their verdict used the word "verdict" instead of the word "issues" which was in the form given to the jury by the court. The form of verdict used by the jury was responsive to the instructions given. We find no authorities holding that its particular variance from the usual form is fatal and appellant's counsel have cited none. No objection was made to the form of the verdict either at the time it was returned or in the motions for a new trial or in arrest of judgment and when not so raised the objection will not be considered here. [29 Cyc. 753; Chapman v. White, 52 Mo. 179; Sweet v. Maupin, 65 Mo. 65; Kamerick v. Castleman, 29 Mo. App. 658.]

**Verdict.**

Complaint is also made on account of the admission of testimony that there were steps on the Bell telephone pole which the children climbed, on the theory that such evidence was an attempt to make out an "attractive-nuisance" case. We have already ruled that this evidence was competent to show the actual situation and had nothing whatever to do with the attractive-nuisance doctrine.

**Steps on Pole.**

V. The verdict was for $30,000 and appellant insists that the amount is excessive. Respondent's permanent disabilities are confined to his left foot and left hand. In addition to the loss of two fingers and two toes and of the first joint of the index finger and of the thumb, the remainder of which latter member is bound down and imbedded in palm scar tissue, the great toe turned from its socket outward, these limbs are scarred, gnarled, disfiguring and generally ineffective, though plaintiff's physician testified that they were much better than no hand and no foot on that side. In cases of similar earning capacity and life expectancy, we have not approved damages in excess of $10,000 for the total loss of a limb.

In Godfrey v. Kansas City Light & Power Company, 299 Mo. 472, we affirmed a judgment for $15,000 because of electrical burns to a twelve-year-old boy. The burns were confined to his face and hands, resulting in scars which permanently disfigured the face and affected the "smile muscle," deep scars on the hands somewhat impairing their use, impairment of vision, and a general upset of the central nervous system. At the time of the trial the injured boy's parents had to cut and prepare his food for him at the table. He was treated at home three weeks and then removed to a hospital where he remained five or six weeks and underwent three operations involving skin grafting.

In the instant case respondent's burns were apparently more se-
vere, resulting in the complete severance of two fingers and two
toes, loss of the first joints of the index finger and thumb, and greater
impairment of the use of the injured limbs, but there is no evidence
of the consequent nervous disorders which were shown in the God-
frey case. The hospital experience was longer, the surgical treatment
which also included skin grafting was of greater duration and more
distressing, and the injuries were apparently more painful in the
case now before us. It was necessarily more or less conjectural
whether or not the nervous disturbances testified to in the Godfrey
case would be permanent, but the sad handicaps resulting from this
respondent's injuries are obviously severe and permanent. However,
we think the judgment was excessive by $12,500. If the respondent
will remit this amount within ten days after this opinion is filed with
the clerk of this court, the judgment will be affirmed for the sum
of $17,500 as of the date rendered; otherwise, the judgment will
be reversed and the case remanded for a new trial. All concur, ex-
cept *Graves, J.,* absent.