(No. 18946.

ELINOR BURNS, Admx., Defendant in Error, *vs.* THE CITY OF CHICAGO, Plaintiff in Error.

*Opinion filed December 20, 1929.—Rehearing denied Feb. 13, 1930.*

SAMUEL A. ETTELSON, Corporation Counsel, and WILLIAM D. SALTIEL, City Attorney, (CHARLES M. McDONNELL, E. MARSHALL AMBERG, and ROY S. GASKILL, of counsel,) for plaintiff in error.

CHARLES C. SPENCER, and ARTHUR A. HOUSE, for defendant in error.

Mr. COMMISSIONER EDMUNDS reported this opinion:

Elinor Burns, as administratrix, brought action against defendant, the city of Chicago, to recover damages for the wrongful death of her intestate, Robert E. Burns, a minor aged eight years and three months. At the close of plain-

tiff's case defendant moved for a directed verdict in its favor. The motion was overruled; defendant offered no evidence and renewed the motion, which was again overruled; and the cause was submitted to the jury, which returned a verdict in favor of the plaintiff in the sum of $4000. Judgment was entered on the verdict in this amount and on appeal was affirmed by the Appellate Court. The case is here on *certiorari*.

Defendant's motion for a directed verdict in its favor raises in this court the question whether there is evidence in the record which, taken with all its reasonable inferences, would be sufficient in law to support the cause of action. *Wheeler* v. *City of LeRoy,* 296 Ill. 579; *Curran* v. *Chicago and Western Indiana Railroad Co.* 289 id. 111; *Jenkins* v. *LaSalle County Coal Co.* 264 id. 238.

The death of plaintiff's intestate was occasioned by an electric shock received while he was at the top of a twenty-six-foot steel tubular pole owned and controlled by the defendant and from which was suspended an electric light used for the purpose of lighting Langley avenue, a public street in the city of Chicago. The pole was situated in the parkway space in the public street, at the curb. It rested in an iron collar about a foot from the ground. About four and one-half feet above the ground there was an opening in the pole, the exact size of which is not disclosed by the record. This opening had at one time been closed by a door. Nine feet and seven inches above the ground commenced a series of steps, which continued to the top. At the top there was a bracket, which extended horizontally over the street, and from it there was suspended an electric lamp. Two electric wires extended from the bracket to this lamp. The feed wire was fastened at the top of the pole and extended in a northerly and southerly direction to other poles along the street, 125 feet north and south of the one in question. Where the wires were attached to the pole they had a weather-proofing covering, designed to pre-

vent corrosion but which did not prevent the escape of electricity if grounded. While the record does not disclose the exact voltage of the electric current at the place of the accident, it is shown to have been more than ample to cause the death of a human being. Before dark on the evening of August 28, 1924, plaintiff's intestate and other boys were playing ball in the vicinity of the pole in question. After dark they continued to play at other games. They had a quantity of street car transfers which they used as money, and a bet was made that plaintiff's intestate could not climb the pole and touch the lamp. He accepted the challenge. The testimony tended to show that he stepped first on the iron collar, then put his hand in the hole to assist in drawing himself up, put his knee in the hole, seized the step above, and made his way on the steps toward the top. When he was about three-fourths of the way up one boy said, "You come down, Robert; it is dangerous up there." This advice was not heeded. He went on to the top, then started down, whereupon one of the boys below "hollered" that he would not win the transfers unless he touched the light. Plaintiff's intestate then went back to the top, seized the wire beside the lamp and fell to the ground. The evidence tends to show that boys had climbed the pole before, though there was no testimony that they had ever been seen around the top of it. A housewife in a nearby residence testified that on several occasions when she had seen boys on it she had warned them to get down.

The position of counsel for defendant in error (plaintiff below) is that defendant's liability herein is settled by the law of this State, citing particularly *Deming* v. *City of Chicago,* 321 Ill. 341, and *Stedwell* v. *City of Chicago,* 297 id. 486. In addition to these cases counsel cite several other Illinois cases, as well as several authorities from other jurisdictions.

Counsel for the city of Chicago take the position that the cases of *Deming* v. *City of Chicago, supra,* and *Stedwell*

v. *City of Chicago, supra,* as well as other cases cited by defendant in error, are not in point; that no negligence on the part of the defendant was proved, and that plaintiff's intestate was injured solely by reason of being a trespasser on the pole, without being lured or invited thereon by attractive appliances. Defendant also complains of one of the instructions given, but in view of the conclusion of the court on the broader issue of the case it is unnecessary to consider this assignment of error. Defendant cites and relies strongly upon the cases of *Howard* v. *St. Joseph Transmission Co.* 289 S. W. (Mo.) 597, and *Water and Light Co.* v. *Webb's Admr.* 129 Ky. Ct. of App. 395, 111 S. W. 712, in both of which, under circumstances quite analogous to those in the present case, it was held that there was no cause of action.

In *Deming* v. *City of Chicago, supra,* a boy nine years old climbed a poplar tree to get a kite which had caught in the branches. The tree was growing in the street and its lowest limbs were six or seven feet above the ground. About twenty feet above the ground, and about a foot from the trunk, two electric wires, a few inches apart, ran through the tree. The covering on these wires was worn off and for several years sparks had been seen in the tree. While among the branches the boy came in contact with one of the wires and was killed. This court said that there was sufficient evidence of negligence to justify submitting the case to the jury, stating: "Whether the tree located in the public street was so attractive to children in their sports as to suggest the probability of such an accident as occurred, and whether the city was negligent in maintaining the wires as it did, were questions for the jury."

In *Stedwell* v. *City of Chicago, supra,* a wire was attached to brackets under an elevated railway structure where the latter ran over a public street. The elevated structure was supported by means of iron posts, on two sides of which cross-pieces were attached from the foundation to the super-

structure, giving the appearance of latticework. The wire passed within ten inches of certain of these supports, about thirteen feet above the street level. It was covered with a weather-insulating compound, designed for weather protection but which was not sufficient insulation to protect persons. While playing "tag," a boy eleven years and seven months old climbed up the latticework to the top, came in contact with the wire and was severely injured. The court said: "The wire was thirteen feet above the surface of the ground and it is argued was not attractive to children; that if anything was attractive to them it was the latticed pillar of the elevated railroad company. The pillar was there when the wire was strung by plaintiff in error and the wire was placed within ten inches of the top of the pillar. If the pillar, constructed as it was, presented an attraction and allurement to children to climb it in their play and they did so use it in their childish sports, and plaintiff in error placed the dangerous wire in such close proximity to it that in its play a child might come in contact with the wire and be injured, the fact that the plaintiff in error did not construct or own the pillar would not, itself, relieve it from liability. Where an attractive thing is so located that in yielding to its allurement a child is brought in direct contact with a danger placed there by someone else, the person responsible for creating the dangerous condition will be liable."

The emphasis placed in these two decisions upon the element of "attractiveness" or "allurement" follows a consistent indication, running through all the cases in which this general question has been before this court, that the "attractiveness" or "allurement" of the dangerous agency, or of other agencies in intimate juxtaposition to such dangerous agency, is of paramount importance in determining liability. Thus, in *City of Pekin* v. *McMahon*, 154 Ill. 141, cited by defendant in error, where a boy was drowned while playing around a pond, the court said: "The city authorities had been notified of its attractiveness to children and

of its dangerous character." The element of allurement was provided by the pond, containing floating logs. In *Stollery* v. *Cicero Street Railway Co.* 243 Ill. 290, where a boy was killed by a dangerous machine, the court said: "Under the decisions of this State unguarded premises supplied with dangerous attractions are regarded as holding out an implied invitation to children, which will make the owner of the premises liable for injuries to them even though the children be technical trespassers." The element of allurement was furnished by a conveniently accessible piece of machinery. In *McDermott* v. *Burke,* 256 Ill. 401, cited by defendant in error, where injury was caused from a hoisting apparatus near a sand pile where children played, the court said: "It is a necessary element of the liability that the thing which causes the injury is tempting to children and to constitute a means of attracting them upon the premises which the owner should anticipate." The hoisting apparatus was held not to be an allurement. In *Follett* v. *Illinois Central Railroad Co.* 288 Ill. 506, where a child was killed while playing with a push-car on a station platform, the court said: "Where an owner creates upon his premises a dangerous thing which from its nature has a tendency to attract children, who from childish instincts are drawn into danger, the law requires such reasonable precautions as the circumstances admit of to prevent them from playing with the thing or to protect them from injury while playing with it. The cases fall into two classes: First, where the injury results from some dangerous element a part of or inseparably connected with the alluring thing or device, as in the turn-table cases, where children may be killed or injured while playing with the thing on account of its dangerous nature; second, where the attractive device or thing is so located or situated that in yielding to its allurement the child, without such intervention of another element as breaks the relation of cause and effect, is brought directly in contact with danger from some inde-

pendent source which occasions the injury." In *Mindeman* v. *Sanitary District,* 317 Ill. 529, the court held that the canal of the Sanitary District of Chicago was not "an attractive nuisance." In *Darsch* v. *Brown,* 332 Ill. 592, the court quoted extensively from the opinion in *McDermott* v. *Burke, supra,* including the language with respect to attractiveness above set forth from that opinion.

In the light of this test, both in theory and as actually applied, the difference between the present case and others in which the claim of "attractiveness" or "allurement" has been upheld by this court is obvious. In the case of *Deming* v. *City of Chicago, supra,* the agency presented was a tree with conveniently accessible branches. The attractiveness of trees to boys and the propensity of boys to climb trees and play among their branches has been commented upon by courts in many cases, one of which, *Temple* v. *Electric Light Co.* 89 Miss. 1, 42 So. 874, cited by defendant in error, refers to it as "an immemorial habit." In an opinion in which the Supreme Court of Maine flatly says that the "attractive nuisance" doctrine has never been adopted in Maine, the court nevertheless held that a cause of action was stated by a declaration which alleged, in substance, that defendant maintained a high tension transmission line along the highway past the residence of plaintiffs, the wires of which were uninsulated; that the wires were strung through trees on plaintiffs' premises, and that plaintiffs' minor son, while climbing one of the trees, came in contact with a wire and was killed. The court said: "In constructing and maintaining a line for transmitting the subtle agency of electricity no one may with impunity totally disregard the natural habits and the childish inclinations of boys at play to climb the dooryard shade trees. Human life is short enough and its burdens and responsibilities come soon enough, at best. To take from boyhood the legitimate pleasures and adventures of tree climbing would unduly restrict the confines of that memory cher-

ished domain, and lessen life's joys both there and thereafter." (*Chickering* v. *Lincoln County Power Co.* 118 Me. 414, 108 Atl. 460.) In *Graves* v. *Interstate Power Co.* 189 Iowa, 227, 178 N. W. 376, the Supreme Court of Iowa said: "Courts have generally held that it is the duty of those engaged in erecting and maintaining wires conveying a deadly current of electricity to properly insulate the same where they pass through shade trees, which, it should be reasonably anticipated, might be climbed by children of immature years and without knowledge of the danger involved." Other recent cases involving wires running through trees and in which a similar position has been taken by the courts, are *Shannon* v. *Kansas City Light and Power Co.* 315 Mo. 1136, 287 S. W. 1031, *Stark* v. *Holtzclaw,* 90 Fla. 207, 105 So. 330, and *Cooper* v. *North Coast Power Co.* 117 Ore. 384, 244 Pac. 665.

In the case of *Stedwell* v. *City of Chicago, supra,* there was a latticework extending from the very bottom of the structure to within ten inches of the wire which caused the injury. The situation was thus similar to that in a distinctive group of cases in other jurisdictions wherein poles and wires were involved and in which recovery was allowed. Thus, in *Consolidated Electric Light and Power Co.* v. *Healy,* 65 Kan. 798, 70 Pac. 884, cited by defendant in error, charged wires were placed within easy reach of a bridge or viaduct on which children were wont to play and loiter. In *Znidersich* v. *Minnesota Utilities Co.* 155 Minn. 293, 193 N. W. 449, the pole which was climbed to reach the wire had steps extending from near the ground to the top. The same situation was presented in *McKiddy* v. *DesMoines Electric Co.* 202 Iowa, 225, 206 N. W. 815, where the steps of the pole commenced only eighteen inches from the ground.

Any boy seeing a tree with low branches, a latticed structure affording easy foot and handhold from the ground

up, or a pole with steps leading up from within a foot or so of the ground, might reasonably be expected to give expression to his inward urge to climb. The element of "attractiveness," "allurement" or "invitation to climb" is under such circumstances clearly present. But a boy's instinct to propel himself aloft would not be aroused in corresponding degree by the spectacle of a smooth iron pole, with the nearest step nearly ten feet above the ground. It may be granted that the hole in the pole in the present case measurably enhanced the accessibility of its upper portions over what they would have been had no such hole been present and had the pole been entirely solid for the first nine feet and seven inches above the ground, and there would yet remain a marked difference in degree of allurement between it and the other agencies which this court has said gave a basis for action.

If the pole in the present case could be said, as an abstract proposition, to have held out the necessary degree of allurement to boys of tender years, it might not be a conclusive answer to plaintiff's contentions to say that plaintiff's intestate did not come to his death by yielding to that allurement but rather because he accepted a dare to do something regarded as at least being out of the ordinary and which the boys presumably recognized as involving an element of risk. But in *State* v. *Trimble,* 315 Mo. 32, 285 S. W. 455, the Supreme Court of Missouri in an analogous case laid considerable emphasis upon just such a consideration. The pole there involved had steps starting only eighteen inches above the ground. The wire at the top had at one time been insulated but the insulation had worn off. While the boy was in the vicinity of the pole some girls came along, and he started to climb it, saying, "Who dares me to walk the wire?" While at the top his foot slipped and he grabbed the wire to keep from falling. The court said: "As stated above, it was not the attrac-

tion of the pole as maintained, but it was the desire to do something unusual, hazardous, difficult and heroic, and thus appear well in the eyes of the girls, that induced the boy to undertake his reckless and dangerous feat. Cases wherein wires were stretched close to trees which were easy to climb and which children did climb and play therein do not seem to me to be in point, for it is well known that boys are fond of climbing trees and of playing therein, and in doing so they are not expecting to come in contact with a deadly wire." It is thus apparent that the court did not allow even for the implied invitation of steps extending from the ground up.

Counsel for defendant in error suggest that to deny recovery in this case would be to recede from or modify a position already taken by this court. The issue presented is rather whether this court will proceed beyond such position, which might fairly be said to be already well advanced. To say that whenever the claim is made that an injury to children engaged in play has been occasioned by a dangerous agency the case must always be submitted to the jury to determine whether there was an element of attractiveness present is going too far. The situation has been aptly expressed in a recent Minnesota case, in which the court said: "To the irrepressible spirit of curiosity and intermeddling of the average boy there is no limit to the objects which can be made attractive playthings. In the exercise of his youthful ingenuity he can make a plaything out of almost anything and then so use it as to expose himself to danger. If all this is to be charged to natural childish instincts and the owners of property are to be required to anticipate and guard against it, the result would be that it would be unsafe for a man to own property, and the duty of the protection of children would be charged upon every member of the community except the parents or the children themselves." *Erickson* v. *Minneapolis, St. Paul and Sault Ste. Marie Railroad Co.* 165 Minn. 106, 205 N. W. 889.

The Supreme Court of the United States, which through the leading case of *Sioux City and Pacific Railroad Co.* v. *Stout,* 17 Wall. 657, gave this so-called "turn-table" or "attractive nuisance" doctrine to America, in two recent cases has indicated emphatically that it will not only not extend the application of the doctrine but that its disposition is rather to modify its former holdings. In *United Zinc Co.* v. *Britt,* 258 U. S. 268, Justice Holmes, speaking for the court, said: *"Union Pacific Railway Co.* v. *McDonald,* 152 U. S. 262, and kindred cases, were relied upon as leading to the result, and perhaps there is language in that and in *Railroad Co.* v. *Stout,* 17 Wall. 657, that might seem to justify it; but the doctrine needs very careful statement not to make an unjust and impracticable requirement. * * * Infants have no greater right to go upon other people's land than adults, and the mere fact that they are infants imposes no duty upon land owners to expect them and to prepare for their safety. On the other hand, the duty of one who invites another upon his land not to lead him into a trap is well settled, and while it is very plain that temptation is not invitation, it may be held that knowingly to establish and expose, unfenced, to children of an age when they follow a bait as mechanically as a fish, something that is certain to attract them, has the legal effect of an invitation to them although not to an adult. But the principle, if accepted, must be very cautiously applied."

In *New York, New Haven and Hartford Railroad Co.* v. *Fruchter,* 260 U. S. 141, the court held that a railroad company was not liable for the injury of a boy eight years old who climbed to the topmost girder of a municipal bridge used for conveying a street across a railroad and thence up a latticed tower, where he touched a live wire. The girder was twenty-three feet above the bridge floor. The latticed tower extended six feet higher. The bridge was formed of "posts, beams, girders, etc., connected and strengthened by trellis or latticework." Boys often climbed to the highest

parts of the bridge. Words of warning were posted at each end of the bridge, but it was doubtful whether the injured boy could read them. The lower court accepted the theory that the jury could have found the structure was well known to be both dangerous and attractive to children, and that failure to supply proper guards, human or mechanical, constituted negligence within the meaning of the doctrine of *Sioux City and Pacific Railroad Co.* v. *Stout; supra.* The judgment was reversed, the court reiterating the language used in *United Zinc Co.* v. *Britt, supra,* and concluding: "Considering the peculiar circumstances of the present case it is clear that if the plaintiff had been an adult he could not recover, and we are unable to find any sufficient evidence from which the jury could have properly concluded that the railroad company, either directly or by implication, invited him or licensed him to climb upon the strut to a point from which he could touch the bare wire thirty feet above the street."

In our opinion the position thus recently taken by the Supreme Court of the United States to the effect that a doctrine which is admittedly an exception to established rules of law "must be very cautiously applied," is sound as well as significant. Recovery would not be warranted upon the facts of the present case. The trial court should have allowed defendant's motion for a directed verdict.

The judgments of the Appellate Court and the superior court of Cook county are reversed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgments reversed.*