Laverne Harrison, Minor, by J. Stavoos, Her Mother and Next Friend, Appellee, v. City of Chicago, Appellant.

Gen. No. 41,256.

BURKE, J., dissenting.

Opinion filed January 22, 1941.   Rehearing denied February 5, 1941.

BARNET HODES, Corporation Counsel, for appellant; ALEXANDER J. RESA, ADAM E. PATTERSON and SYDNEY R. DREBIN, Assistant Corporation Counsel, of counsel.

NATHAN ALLEN, of Chicago, for appellee.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

An action was instituted at law by Laverne Harrison, a minor, by her mother and next friend, J. Stavoos, plaintiff, against the City of Chicago, a municipal corporation, defendant, to recover damages for personal injuries alleged to have been sustained by her while climbing and playing on a newspaper stand on the southeast corner of 83rd street and South Chicago avenue in the City of Chicago on July 14, 1933 at about 12 o'clock noon.

The cause was tried before a judge and jury, resulting in a verdict for plaintiff in the sum of $5,000, upon which the court entered judgment after overruling the defendant's motions for a new trial and in arrest of judgment.

In plaintiff's pleadings it is alleged, among other things, that the newspaper stand did not conform in measurements to the requirements of Municipal Ordinance 990 of the Revised Chicago Code 1931, and plaintiff further alleges in paragraph 3 of her second-amended complaint that the newspaper stand was an attractive nuisance, a dangerous instrumentality, alluring and appealing to childish instincts.

Plaintiff's theory of the case is that the City of Chicago permitted the maintenance of a certain news-

paper stand on the sidewalk and parkway on the southeast corner of 83rd street and South Chicago avenue, the dimensions of which exceeded those prescribed by section 990 of the Revised Chicago Code of 1931; that said newsstand was a dangerous instrumentality, an attractive nuisance alluring and appealing to childish instincts and curiosity; that the city failed to provide guards, fences or barricades sufficient to exclude children from playing around said newsstand; that the plaintiff exercised ordinary care for a child of her age, intelligence and experience; that plaintiff was 8 years of age at the time of the accident, and while she was playing around said stand, as a result of the negligence of the city she was injured.

Defendant's theory of the case is that the mere existence of the newspaper stand of the alleged dimensions and its maintenance by one Tony Pecora who owned and operated it under a permit issued by the city, does not make the city guilty of negligence in the absence of proof that the alleged difference in the dimensions of the stand was the proximate cause of the injury; that the newspaper stand as constructed and maintained was not an attractive nuisance in contemplation of the law; that the city was not negligent and that negligence on the part of the city was not proved, and that the city had no notice of the alleged difference in the dimensions of the newspaper stand.

The evidence shows that the plaintiff was a child 8 years of age at the time of the accident and that she was accompanied by another girl, Bernice Trella, who was also a minor; that plaintiff and her companion had crossed the street to purchase some candy and they came back and went to the newsstand; that said newsstand was situated half on the sidewalk and half on the parkway; that they first sat in the newsstand and then started to swing on the top of it and after plaintiff was on it, the newsstand tipped over and fell half on the sidewalk and half on plaintiff.

The evidence further shows, as testified to by plaintiff's companion, that they went to the newsstand because it looked like a nice place to play.

Plaintiff testified that she and Bernice Trella were coming from the candy store and sat on the newsstand and it fell on her; that she never played at the newsstand before she was injured but had seen other children playing there before that time.

Hazel Harrison, a witness for plaintiff, testified that she saw the newsstand at the southeast corner of 83rd street and South Chicago avenue during the year preceding the accident, as she passed that corner 3 or 4 times a week and that during the year immediately preceding this accident she saw children playing on or about the stand quite a number of times, on an average of once a week.

Another witness, Roman Gonnewein, testified that the newspaper stand was 19 inches deep at the base, height of rear was 62 inches, height of front was 68 inches, shelf was 3 feet from ground and 29 inches deep, and the roof extended out 8 inches to 8½ inches; that he saw the newsstand lying in the parkway a half dozen or ten times during the year preceding the accident.

The city ordinance (Rev. Chi. Code, 1931—p. 282) provides for dimensions of newsstands, as follows: Depth of base 23 inches, width of base 28 inches, height 32 inches, top width 40 inches, top depth 26 inches, height of backboard 17 inches.

In *Wolczek v. Public Service Co.*, 342 Ill. 482, the Supreme Court adopted the rule applicable in attractive nuisance cases and at page 490, said:

"It is based on the humane consideration that where one maintains on his premises a dangerous agency, so located as to attract children from a place where they have a right to be, and that such owner knows, or should know, of its dangerous character and of its attractiveness to children and the probability of injury to them by it but does not use reasonable care to

protect or warn them against it, then he is guilty of negligence. There has been no deviation from this rule since the case of *City of Pekin v. McMahon,* 154 Ill. 141.''

In the case of *O'Donnell v. City of Chicago,* 289 Ill. App. 41, being a case where a boy had climbed a pole to view a prize fight in a stadium, touched a live wire and was injured, this court held that pole constituted an attractive nuisance. In the opinion this court pointed out that in the case of *Oglesby v. Metropolitan West Side El. Ry. Co.,* 219 Ill. App. 321, this court had previously held that the mere fact that an instrumentality is not in and of itself particularly attractive to children, would not exclude it from the application of the attractive nuisance doctrine, and that the question in such cases was whether the owner maintained instrumentalities which, because of their location, could reasonably be expected to attract children.

In the *O'Donnell* case *supra,* this court cited the case of *Consolidated Elec. Light & Power Co. v. Healy,* 65 Kan. 798, in which case electric wires defectively insulated ran along on timbers projecting from the side of a bridge where small boys were in the habit of climbing over the railing near the wires. One of the boys came in contact with one of the wires and was killed and his parents recovered a judgment for damages, which was affirmed by the Supreme Court. In its opinion the court pointed out that the electric light company had not maintained the bridge and the railing which constituted an attractive climbing place for boys, but the wires were maintained in such immediate proximity to that which was attractive as to constitute them a part of the whole situation. The court said: ''It put its wires within the attractive environment. It identified itself in that way with the attractive place.''

The purpose of a street, as is well known, is to permit travel thereon and it is one of the duties of the City of Chicago to keep streets free of obstructions and

danger. The question is not argued as to the right of the city to grant permits for placing obstructions thereon. The evidence shows that this newsstand had been there for a period of a year, sometimes standing upright and sometimes lying sidewise on the ground.

It is contended by defendant, who offered no evidence, that plaintiff's evidence shows that Laverne Harrison was standing on the ground a foot or more from the stand and Bernice was swinging from the top.

On cross-examination Laverne Harrison stated, "I imagine I was about a foot away from the newsstand, standing on my feet, before the newsstand fell. At that time Bernice was sitting inside the stand. I don't remember if she was on top of the stand while we were playing there. Bernice jumped off the stand and it was after she jumped off that it fell and came on me. I saw her jump and I saw it come with her. I didn't move at all; I just was looking at her when it fell . . . I didn't have time to move away."

Bernice Trella when testifying stated that at first they were sitting in the paper stand and then they started to swing on the top of it and that when she was on it, it tipped over and fell.

We think there is sufficient evidence in this record to show that the plaintiff was attracted to this newsstand and was injured while playing around it and that it should, therefore, be considered as an attractive nuisance; that the city authorized and permitted this newsstand to remain at the place designated and that children in the neighborhood had been playing in that vicinity for a period of a year. As was said in *O'Donnell v. City of Chicago*, 289 Ill. App. 41:

"Instrumentality may come within the attractive nuisance rule if it is so placed as to be a part of a general environment which is attractive to children. . . ."

In *Oglesby v. Metropolitan West Side El. Ry. Co.*, 219 Ill. App. 321, it was held that the mere fact that an instrumentality is not in and of itself particularly attractive to children would not exclude it from the application of the attractive nuisance doctrine, and that the question in such cases was whether the owner maintained instrumentalities which, because of their location, could reasonably be expected to attract children.

Manifestly, in this case it can be easily seen from the exhibits and photographs that the newsstand in question was in the shape or form of a house and the tendency of children to seek out playhouses is well known. This stand was on a foundation of vertical boards and the place where the papers were to be placed when in use was fastened to this foundation and extended out and beyond it which made the newsstand top-heavy. It had a sloping roof which gave it the appearance of a house or shed and such a shelter would readily appeal to the childish mind as a place in which to play and as such was a standing invitation to children in the neighborhood to use it for that purpose, as it could serve as a miniature house. The danger which presented itself because of this stand being top-heavy was not apparent to children, and, in a measure, it served as a kind of trap.

We think the evidence clearly shows that the defendant city was guilty in permitting such a dangerous instrumentality as would allure children because of their innate curiosity to play in and around such newsstand and to permit such newsstand to remain on a public street unless adequately fastened in order to alleviate certain dangers which rendered this newsstand not only an attractive nuisance but a general nuisance.

Complaint is made as to the instructions given. We think entirely too many instructions were given. Some 16 instructions were given at the request of plaintiff

and some 15 instructions were given at the request of defendant and in addition thereto one instruction was given on behalf of the court.

The testimony of the doctors shows that there were lacerations over plaintiff's eyes and nose; that plaintiff was taken to the hospital where the wound was sutured; that hot packs and dressings were applied and she was given a lockjaw serum; that the stitches sloughed away and the bone became infected and that the wound had to be left open to drain on account of the infection. As a result of the accident there is a scar on plaintiff's forehead two inches long and one-half inch wide and at the time of the trial she still suffered from frequent headaches and she is probably disfigured for life.

We are not quite satisfied that the record shows sufficient evidence to sustain the amount of damages as awarded by the jury. While we are reluctant to disturb the findings of a jury on such questions, as in most instances the jury is in a better position to fix the amount of damages than is the trial or reviewing court, yet, in this case, we are of the opinion that the amount of damages is somewhat excessive and this court accordingly affirms the judgment of the circuit court upon a remittitur of $1,500 being made by plaintiff to this court within 10 days, otherwise the judgment will be reversed and the cause remanded for a new trial.

*Judgment affirmed upon a remittitur by plaintiff of $1,500, otherwise the judgment is reversed and the cause is remanded.*

HEBEL, P. J., concurs.

MR. JUSTICE BURKE dissenting: The second-amended complaint recites that an ordinance of the City of Chicago authorizes the commissioner of public works to permit stands to be maintained on the public streets for the purpose of exhibiting for sale daily newspapers printed and published in Chicago, which stands "shall

not exceed'' certain dimensions. The complaint avers that the newsstand did not conform to the requirements. The complaint, however, does not charge that the injury to the minor was caused by any failure to construct the stand in accordance with the ordinance. It will be observed that the ordinance inhibits the maintenance of stands exceeding the prescribed dimensions. There is no inhibition against the construction of stands of dimensions less than those precribed in the ordinance. The apparent purpose of the provision limiting the size of stands is to prevent the erection of large structures which would be an obstruction to the view and freedom of movement of pedestrians and the drivers of vehicles. Plaintiff in her brief admits that ''there was no proof of any defect in the construction of the stand.'' She states that she ''only proved that it violated an ordinance in the manner of its construction regarding dimensions.'' It is undisputed that Laverne was injured because her playmate Bernice was swinging from the stand, thereby causing it to fall on Laverne. The swinging from the stand by Bernice is what caused the injury. It is not contended that Laverne ran into the stand. Both girls knew that the stand was there. It would be unreasonable to expect that the stand would be so constructed as to prevent a child from pulling it over. The majority opinion states that it is the duty of the city to keep streets free from obstructions and danger. This might be important if Laverne ran against the stand. Plaintiff grounds her right to recovery on the doctrine of attractive nuisance. The sale of newspapers from stands located on sidewalks and parkways is a well-recognized activity in our modern life in every city. It is not contended that these stands are nuisances. In fact, plaintiff pleads the ordinance which authorizes the commissioners of public works to issue permits for their maintenance. Nor can I perceive that the stands are dangerous to children. Certainly,

a newspaper stand is not inherently dangerous. The party who operated this stand could not be expected to anticipate that children would attempt to swing from it. Presumably, the stand is considered attractive because a child is able to swing from it. On the same reasoning, anything that a child can swing from would be attractive, and the operator of an automobile who parked his car for 10 minutes while doing some shopping would be liable if a child fell and was injured while swinging from his car. The owner of property is not required to protect children from every possible harm. It is my view that the majority opinion unduly extends the attractive nuisance doctrine. I am of the opinion that the judgment should be reversed and that a judgment should be entered here for the defendant and against the plaintiff.